UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 4:22-CR-00139-MTS |
| NAQUAN POWERS, | ) |
| Defendant. | ) |
| | ) |
| | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Naquan Powers, represented by defense counsel Raphael Morris, II, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 4 through 10 of the Indictment, the Government agrees to move for the dismissal of Counts 1 through 3 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to

1

the defendant's bank fraud scheme from June through August of 2019 of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts 4 through 6 and Count 10, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to all items identified in the forfeiture allegation of the Indictment.

## 3. ELEMENTS:

As to Counts 4 through 6 and Count 10, Defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant knowingly executed a scheme or artifice to obtain the money, funds, or other property owned by or under the control of a financial institution by means of materially false or fraudulent pretenses, representations, or promise; and

**Two,** the defendant did so with the intent to defraud; and

**Three,** the financial institution fit the definition in 18 U.S.C. § 20.

As to Counts 7 through 9, Defendant admits to knowingly violating Title 18, United States Code, Section 1028A, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant knowingly transferred, possessed, or used;

**Two,** without lawful authority;

**Three,** a means of identification of another person;

**Four,** during and in relation to the felony offense of bank fraud.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Starting on or about June 24, 2019, until on or about August 23, 2019, Defendant purchased three vehicles at the Marty Cancilla vehicle dealership (Marty Cancilla) located in Florissant, Missouri. When Defendant purchased these vehicles, he applied for and received loans or lines of credit for the purchases from Fifth Third Bank, Ally Bank, and Arsenal Credit Union, all of which are financial institutions under the definition of 18 U.S.C. § 20. However, Defendant used the names and personally identifiable information of two other individuals, with corresponding fraudulent Social Security cards and driver's licenses, to apply for and receive said loans and vehicles. Defendant made these purchases with the assistance of a salesperson at Marty Cancilla, (L.C., indicted in case # 4:22-CR-00570-SEP) who Defendant had previously texted with the name and other personally identifiable information of the victims and other individuals.

3

On or about June 24, 2019, Defendant used the name and Social Security Number (SSN) of victim A.T., SSN ending in 8060, to purchase a Chevrolet Impala with a loan in the amount of $18,098.00 from Fifth Third Bank. On or about July 24, 2019, Defendant used the name and SSN of victim A.M., SSN ending in 1499, to purchase a Chevrolet Tahoe with a loan from Ally Bank in the amount of $42,086.00. Finally, on August 5, 2019, Defendant used the name and SSN of A.M., SSN ending in 1499, to purchase a BMW 428 XI with a loan from Arsenal Credit Union in the amount of $29,079.00. Defendant was arrested at Marty Cancilla on August 23, 2019, when Defendant attempted to purchase a Dodge Challenger again using the name and Social Security Number of A.M., in the amount of $38,191.00. The total intended loss for the Marty Cancilla transactions and attempted transaction is $127,454.00.

On the date of Defendant's arrest, his phone was seized and searched pursuant to a properly executed search warrant. Information found on Defendant's phone showed Defendant messaging other people with, among other things, photographs of fraudulent identifications containing Defendant's picture and the names and information of other individuals, names and personally identifying information of multiple individuals, and a video of multiple sports cars parked in a row and a male voice saying "oopsie" in the background.

In addition to the conduct described above, in 2018 and 2019, Defendant accessed multiple Discover Bank accounts belonging to other individuals and changed information in these accounts in order to access the money belonging to other individuals and in the custody of Discover Bank. When Defendant accessed the Discover Bank account of victim S.M., Defendant requested and received new debit cards and bank checks to access the funds in the account, which were mailed to an address associated with Defendant at that time. One such check was made payable to and

cashed by J.R., the father of Defendant's reported girlfriend (DCD 13 P.3-4), in the amount of $4,000.00. Defendant also used the debit card to make several purchases, totaling $1,254.56.

In addition, Defendant accessed and added himself as an authorized user to the Discover Bank accounts of victims J.M. and T.S. A replacement card for J.M.'s account was mailed to the same address where S.M.'s replacement card and checks were mailed. No transactions were posted with these unauthorized replacement card and checks. Following Defendant's access of T.S.'s account, $6,000.00 was transferred from T.S.'s account to a Regions Bank account. The total intended loss resulting from Defendant accessing the Discover Bank accounts of multiple victims was $11,754.56.

Defendant admits herein that he knowingly executed a scheme to obtain any of the moneys or funds owned by or under the custody and control of financial institutions by means of materially false or fraudulent pretenses, that he did so with the intent to defraud, and that the financial institutions fit the definition of a financial institution in 18 U.S.C. § 20, by completing and causing to be completed applications for loans and lines of credit from the below named financial institutions, falsely stating that the defendant was the lawfully assigned user of the Social Security Numbers described as outlined below:

| COUNT | DATE | CREDITOR | SSN USED |
|---|---|---|---|
| 4 | 6/24/2019 | Fifth Third Bank | ***-**-8060 |
| 5 | 7/24/2019 | Ally Bank | ***-**-1499 |
| 6 | 8/5/2019 | Arsenal Credit Union | ***-**-1499 |

5

Defendant further admits herein that he knowingly transferred, possessed, and used, without lawful authority, the means of identification of other people, namely the names and Social Security Numbers of victims A.T. and A.M., during and in relation to the felony offense of bank fraud.

Defendant further admits herein that he knowingly executed a scheme to obtain any of the moneys or funds owned by or under the custody and control of financial institutions by means of materially false or fraudulent pretenses, that he did so with the intent to defraud, and that the financial institutions fit the definition of a financial institution in 18 U.S.C. § 20, to wit: Defendant caused Discover Bank to send Defendant replacement bank cards and cash advance checks for the Discover Bank account belonging to victim S.M., and Defendant caused one of the cash advance checks to be made payable to and transmitted to J.R., who cashed the check in the amount of $4,000.00.

**Relevant Conduct**

Following Defendant's Florissant arrest, from in or about September 2020 until in or about October 2020, Defendant caused the fraudulent purchases or attempted fraudulent purchases, by at least four individuals (J.R., D.C., B.J., and A.T.) of vehicles at multiple vehicle dealerships throughout the St. Louis and southern Illinois area. These individuals made these fraudulent purchases using the names and Social Security Numbers of other victims and falsified identification documents at the instruction of Defendant. Some of the vehicles from these transactions were then delivered to Defendant at his residence in Wentzville, Missouri. These four individuals were indicted in the Eastern District of Missouri due to these fraudulent transactions

on November 18, 2020, case number 4:20-CR-00732. The total loss in the 2020 case for all Defendants was $244,374.00.

On or about November 26, 2021, Defendant accompanied another individual, believed to be unhoused, to GMT Auto Sales in Florissant, Missouri. While there, Defendant assisted this individual in an attempt to purchase a vehicle with a loan or line of credit, using the name and Social Security Number of E.P. The sale was denied when the loan application was flagged as possibly fraudulent.

Finally, in 2020 and 2021, Defendant Powers applied for a Paycheck Protection Program (PPP) loan and four Economic Injury and Disaster Loans (EIDL) pursuant to Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) of March 2020. On the PPP loan application, Defendant reported being the sole proprietor in the general freight trucking industry. In support of the application, Defendant submitted a fraudulent 2019 Schedule C (IRS Form 1040) and a fraudulent bank statement from Chase Bank. As a result of the PPP loan application, Defendant received $20,832.00 in PPP funds.

The total known intended loss from Defendant's indicted and relevant conduct, as outlined in this Section, is $404,415.00.

5. **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 4 through 6 and Count 10 is imprisonment of not more than 30 years, a fine of not more than $1,000,000 or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

7

The defendant further understands that the required penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 7 through 9 is imprisonment of 2 years, to run consecutive to any other imposed sentence. The Court may also impose a period of supervised release of not more than 1 year.

## 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level for Counts 4 through 6 and Count 10 is 7, as found in Section 2B1.1.

The parties further agree as to Counts 7 through 9, pursuant to U.S. Sentencing Guideline §2B1.6, the guideline sentence is the term of imprisonment required by statute. Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) shall not apply to these counts of conviction.

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: **12** levels should be added pursuant to Section 2B1.1(b)(1)(G), because the actual and intended loss amount for the charged offenses and relevant conduct was greater than $250,000 but less than $550,000; **2** levels should be added pursuant to Section 2B1.1 (b)(2)(A)(i), because the charged offenses and relevant conduct involved 10 or more victims; **2** levels should be added pursuant to Section 2B1.1(b)(10)(C), because the charged offenses and relevant conduct involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means; **2** levels should be added pursuant to Section 2B1.1(b)(11)(C)(i), because the charged offenses and relevant conduct involved the unauthorized use of any means of identification unlawfully to produce or obtain any other means of identification; **2** levels should be added pursuant to Section 2B1.1(15)(A) because the charged offenses and relevant conduct involved an organized scheme to steal or to receive stolen vehicles; and **2** levels should be added pursuant to Section 2B1.1(b)(12), because relevant conduct involved conduct described in 18 U.S.C. § 1040 (fraud in connection with major disaster or emergency benefits).

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that **3** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent

9

with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: **2** levels should be added pursuant to Section 3B1.1(c) because the defendant was an organizer and/or leader of at least four other individuals in any criminal activity.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level for Counts 4 through 6 and Count 10 is **28.**

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

   a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

   b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

   c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

   d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $700.00 which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss determined by the sentencing court, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agencies.

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant also agrees to the entry of a

forfeiture money judgment against the defendant and in favor of the Government, the exact amount to be determined by this Court at or before sentencing. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. <u>**VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**</u>:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or

coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. <u>**NO RIGHT TO WITHDRAW GUILTY PLEA**</u>:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

_3/30/23_
Date

_Diane Klocke_
Diane Klocke
Special Assistant United States Attorney

_03/30/2023_
Date

_Naquan - D'Vontrell Powers_
Naquan Powers
Defendant

_3/30/23_
Date

Raphael Morris, II
Attorney for Defendant

17